**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| **BREANA A. BOWER, JADIN** | : | **CIVIL ACTION** |
| **DICKERSON, LOGAN SNYDER,** | : | |
| **ZACH NORTHUP, SARA MALONE** | : | |
| | : | |
| **v.** | : | **NO. 25-453-MAK** |
| | : | |
| **DUPONT DE NEMOURS, INC.,** | : | |
| **DUPONT SPECIALTY PRODUCTS** | : | |
| **USA, LLC** | : | |

# <u>MEMORANDUM</u>

**KEARNEY, J.**                                                                                   **June 17, 2026**

Congress allows employees not satisfied with the terms of a settlement of their co-employees' wage claims under the Fair Labor Standards Act to not join the settlement and instead file a case pursuing their view of a better recovery from their employer. Congress did not set limits on employees' rights to seek a better recovery. We today address an employer's opposition to conditionally certifying a collective action filed by an employee unhappy with an earlier settlement principally because it is duplicative of the earlier settled case. We do not agree and find no basis to bar this second case based on the facts before us. The employer offers no basis for us to impose a bar not set by Congress when there is no evidence of abuse or gamesmanship by the employee before us.

But the employee did not oppose let alone make a modest showing of facts allowing us to find the entity owning her employer is a joint employer subject to a collective action. We do not approve the collective action against her employer's owner simply because the employee alleges it owns her employer. We grant the requested collective as to the employer (but not its parent

corporation absent some fact not demonstrated today) but slightly modify the Notice to the identified collective of employees who also did not join the earlier settlement.

### I.    Alleged facts and adduced evidence relating to conditional certification.

Breana Bower worked for DuPont de Nemours, Inc. and DuPont Specialty Products USA, LLC as an hourly machine operator in Ohio from January 25, 2021 until April 1, 2025.[1] Ms. Bower handled chemicals and other hazardous materials as a machine operator.[2] DuPont de Nemours and DuPont Specialty Products required Ms. Bower to don protective clothing and equipment and complete a "shift change" meeting after clocking in but before her scheduled shift time.[3] But DuPont de Nemours and DuPont Specialty Products did not pay her for her time spent donning her protective clothing and completing her shift change meeting before her scheduled shift time.[4] After her scheduled shift ended, DuPont de Nemours and DuPont Specialty Products required Ms. Bower to complete ongoing tasks, remove her protective clothing, and engage in another shift change meeting.[5] DuPont de Nemours and DuPont Specialty Products also did not pay Ms. Bower for the work she completed after her scheduled shift.[6] They did not pay other hourly production employees for their pre- and post-shift work either.[7]

DuPont de Nemours and DuPont Specialty Products did not pay Ms. Bower overtime wages for hours worked in excess of forty hours per week.[8] They also did not pay other hourly production employees like Ms. Bower their overtime wages.[9] Other hourly production employees sued DuPont de Nemours and DuPont Specialty Products to recover their unpaid overtime wages.[10] They brought two federal court cases in 2023 in this District and in the Southern District of Ohio before voluntarily dismissing them.[11] Other employees then filed an Ohio state court case— *Pollock v. DuPont De Demours, Inc.*— to approve a collective action settlement.[12]

Ms. Bower did not join the *Pollock* collective settlement because she became "skeptical of the result" after receiving notices for payment amounts less than DuPont owed her.[13]

So Ms. Bower chose to file suit here. She seeks overtime wages for her unpaid pre- and post-shift work. She sues under the Fair Labor Standards Act and the Ohio Minimum Fair Wage Standards Act to recover these wages.[14] She also sues on behalf of a collective and a class of other hourly production employees who did not join the Ohio state court collective action settlement.[15]

## II.    Analysis

Ms. Bower moves to conditionally certify her proposed collective of "All current and former hourly, non-exempt production employees of Defendants who were paid for 40 or more hours of work in any workweek since April 11, 2022 and who did not participate in the settlement reached in *Pollock et al. v. DuPont de Nemours, Inc.*, et al., No. 2024 CV 06 0520, (Ct. Com. Pl. Tuscarawas Cnty., Ohio)."[16] She claims DuPont de Nemours and DuPont Specialty Products refused to pay her for required activities she performed before and after her shifts and argues she makes the required modest factual showing they applied the same policy to the members of her proposed collective.[17] DuPont de Nemours and DuPont Specialty Products argue we should not conditionally certify Ms. Bower's collective because (1) the collective she proposes is duplicative of an earlier collective, (2) she has not made a modest factual showing warranting conditional certification and is not qualified to be a collective representative, and (3) DuPont de Nemours is not her employer.[18]

We agree with Ms. Bower in part and conditionally certify her collective against DuPont Specialty Products and slightly modify her proposed notice.

**A.  Congress allows multiple collective actions arising from the same policies.**

DuPont de Nemours and DuPont Specialty Products ask us to deny conditional certification because Ms. Bower's proposed collective is nearly identical to the *Pollock* settlement collective in Ohio state court.[19] Ms. Bower replies Congress through the Fair Labor Standards Act allows multiple collective actions arising from the same policies.[20] Our Court of Appeals has not addressed this "duplicative collective" issue and our colleagues' guidance varies based on the facts. But we agree with Ms. Bower given the facts before us.

Congress through the Fair Labor Standards Act provides "federal minimum-wage, maximum-hour, and overtime guarantees" for certain employees.[21] For example, Congress requires employers to pay qualifying employees "one and one-half times the employer's regular wage for hours worked in excess of forty hours per week."[22] An employee can sue her employer for violating this requirement if she shows she "worked overtime hours without compensation" and demonstrates "the amount and extent of [her] overtime work."[23] Congress through the Act also allows an aggrieved employee to sue not only on her own behalf, but also on behalf of other employees who are similarly situated to her.[24] We describe cases as a "collective action" when an employee sues on behalf of other similarly situated employees seeking wages under the Act.[25]

Congress allows multiple collective actions arising from the same policies.[26] DuPont de Nemours and DuPont Specialty Products ask us to exercise our discretion to read into Congress's text some type of prohibition of a second case after Congress allowed employees to not join the first collective action. We will not do so. The request does not make sense given the nature of collective actions. We ask what value there would be to not joining a collective if you could not bring your own collective. We cannot read Congress's text to somehow limit the employee's ability to seek their own remedy consistent with each provision in the Act unless we find some

4

form of improper gamesmanship or duplicative conduct intended to delay and obstruct rather than protect valid interests. We do not decline to conditionally certify Ms. Bower's proposed collective based on this argument because Congress's plain language allows multiple collective actions arising from the same policies. Conditionally certifying a collective here promotes judicial efficiency by avoiding additional individual lawsuits from those persons who chose not to opt in to the earlier collective.[27]

Still, DuPont de Nemours and DuPont Specialty Products ask us to use our discretion to deny Ms. Bower's proposed collective because it is duplicative.[28] Even though Congress through the Act does not prohibit multiple collectives, some of our colleagues still use their discretion to decline conditional certification where there are existing collective actions arising from the same policies.[29] They take an opposing view and conclude multiple collective actions are usually inefficient and strain judicial resources.[30] But they still suggest whether an existing collective action justifies denying conditional certification for a later collective "depends on the factual circumstances of the case."[31] For example, circumstances like "inadequate" notice for the earlier collective, changed "circumstances at the employer," or inadequate "representation in the first . . . case" might support conditionally certifying a duplicative collective.[32] Conditionally certifying a duplicative collective might also be appropriate where "the potential for some employees to receive two notices is outweighed by the fact that many will be receiving only their first."[33]

Ms. Bower's proposed collective is like the settlement collective in *Pollock*.[34] Ms. Bower chose not to opt in to the settlement collective in *Pollock* because she became "skeptical of the result" after receiving notices for payment amounts less than DuPont owed her.[35] Her modest showing today suggests Ms. Bower and other employees did not opt in to the previous collective because of concern with the representation in the earlier Ohio state case collective. Even if we

adopted our colleagues' discretionary approach, there are circumstances allowing Ms. Bower's collective claims to proceed. We are not persuaded by DuPont de Nemours and DuPont Specialty Products' argument as to a duplicative collective.[36]

### B. We conditionally certify Ms. Bower's proposed collective as to her employer.

DuPont de Nemours and DuPont Specialty Products ask us to deny Ms. Bower conditional certification because DuPont de Nemours does not employ Ms. Bower or the proposed collective, we will need to make individualized inquiries to determine liability under the Act, and Ms. Bower is not fit to serve as a collective representative.[37] Ms. Bower responds she has made a modest factual showing supporting conditional certification.[38] We agree with Ms. Bower in part.

We apply a "two-step certification process" to determine whether employees can be certified as a collective.[39] The first step—and the focus today—is "conditional certification."[40] The employee typically only needs to make a "modest factual showing" there is a "a factual nexus between the manner in which the employer's alleged policy affected him or her and the manner in which it affected the proposed collective action members."[41] This means Ms. Bower must show "(1) an employer policy, (2) that affected [her] in a particular way, and (3) that also affected other employees in a similar way."[42] If Ms. Bower makes this showing and we grant conditional certification it allows her to distribute "notice" of the suit "to potential collective action members" and allows other employees the opportunity to opt in to the collective by filing "an affirmative consent to join the collective action."[43] We find Ms. Bower makes a modest factual showing and conditionally certify her proposed collective.

#### 1. Ms. Bower does not make a modest factual showing DuPont de Nemours is a joint employer with DuPont Specialty Products.

DuPont de Nemours argues Ms. Bower's collective claims fail because it is a holding company and does not qualify as an employer under the Fair Labor Standards Act.[44] Ms. Bower

does not respond to this argument.[45] DuPont de Nemours's argument is unopposed. And we agree Ms. Bower has not shown DuPont de Nemours is a joint employer with DuPont Specialty Products.

Congress defines "employer" under the Fair Labor Standards Act as "any person acting directly or indirectly in the interest of an employer in relation to an employee . . . ."[46] One employee can have more than one employer under the Act.[47] Employers are "joint employers" when they "exert significant control over the same employees."[48] We consider "the total employment situation and the economic realities of the work relationship" to determine whether an entity exercises significant control over employees.[49] Factors we might consider when evaluating the total employment situation include: "1) the alleged employer's authority to hire and fire the relevant employees; 2) the alleged employer's authority to promulgate work rules and assignments and to set the employees' conditions of employment: compensation, benefits, and work schedules, including the rate and method of payment; 3) the alleged employer's involvement in day-to-day employee supervision, including employee discipline; and 4) the alleged employer's actual control of employee records, such as payroll, insurance, or taxes."[50] At the conditional certification stage an employee needs to make a modest factual showing an entity is her employer.[51]

Ms. Bower does not make a modest factual showing DuPont de Nemours is her employer. She pleads DuPont de Nemours is a joint employer with DuPont Specialty Products.[52] But Ms. Bower and the hourly production employees submitting declarations to support her Motion state their employer is DuPont Specialty Products.[53] And Ms. Bower does not respond to DuPont de Nemours's argument or explain how she makes a modest factual showing it is her employer.[54] She cannot rely on allegations in her Complaint alone to make a modest factual showing.[55] Ms. Bower does not make a modest factual showing of an employer–employee relationship with DuPont de Nemours. We limit the proposed collective employees working for DuPont Specialty Products.

### 2. Ms. Bower makes a modest factual showing the policy affects her and the proposed collective.

DuPont Specialty Products argues we should not conditionally certify Ms. Bower's proposed collective because we will need to engage in "highly individualized inquiries" to determine whether they are liable under the Fair Labor Standards Act and because Ms. Bower's deposition testimony is "evasive."[56] Ms. Bower argues she makes a modest factual showing its policy affected her and her proposed collective in a similar way.[57] We agree with Ms. Bower.

Ms. Bower makes a modest factual showing DuPont Specialty Products' policy similarly affected her and other hourly production employees. She and other hourly production employees swear DuPont Specialty Products had a policy of not paying them for required work they performed outside of their scheduled shifts.[58] This is sufficient to support conditional certification. DuPont Specialty Products attaches exhibits to support its opposition to Ms. Bower's Motion. And it argues we cannot conditionally certify a collective because we need to conduct an individualized inquiry and because Ms. Bower's deposition testimony is evasive. But we do not weigh evidence or reach the merits of Ms. Bower's claims at this stage.[59] We grant Ms. Bower's Motion for conditional certification.

### C. We approve Ms. Bower's proposed notice in part.

We enjoy "discretionary authority to oversee and facilitate the notice process."[60] Ms. Bower asks us to authorize her to give notice to the proposed collective by mail, email, and text message and to send a reminder notice halfway through the notice period.[61] DuPont Specialty Products opposes Ms. Bower's request to send notice by text message and asks us to allow it to confer with Ms. Bower about the proposed notice.[62] But it is "appropriate . . . to distribute notice by mail, email, and text."[63] We approve Ms. Bower's notice methods.

8

Ms. Bower also asks us to approve her proposed notice and consent forms.[64] We approve Ms. Bower's proposed notice and consent forms with three changes. First, we direct Ms. Bower to remove references to DuPont de Nemours. Second, we direct Ms. Bower to calculate the opt in period as sixty days from today's Order. Ms. Bower now describes the opt in period as "90 days from the date of mailing of the notice."[65]Third, we direct Ms. Bower to replace the Honorable Richard G. Andrews's name mindful of the reassignment to our docket.[66]

### D. We direct DuPont Specialty Products to produce contact information for proposed collective members.

Ms. Bower asks us to order DuPont Specialty Products to produce contact information for the proposed collective members.[67] DuPont Specialty Products does not oppose this request.[68] DuPont Specialty Products shall provide Ms. Bower with a spreadsheet of potential opt-in members with their full names, dates of employment, locations worked, job titles, last known mailing addresses, personal email addresses, and cell phone numbers within fourteen days.

### III.    Conclusion

Ms. Bower made the modest factual showing required for us to conditionally certify her proposed collective. We accept her proposed notice subject to a modification to the opt-in period and the identified judge. We grant her Motion to conditionally certify the collective.

---

[1] *See* D.I. 1 at ¶¶ 9–10. We examine "pleadings and affidavits" when resolving a motion for conditional certification. *See Adami v. Cardo Windows, Inc.*, 299 F.R.D. 68, 78 (D.N.J. 2014).

[2] *See* D.I. 1 at ¶ 37; D.I. 30-2 at ¶ 5.

[3] *See* D.I. 1 at ¶¶ 40–44; D.I. 30-2 at ¶¶ 6–7.

[4] *See* D.I. 1 at ¶ 45; D.I. 30-2 at ¶ 8.

[5] *See* D.I. 1 at ¶¶ 47–51.

[6] *See id.* at ¶ 52.

9

[7] *See id.* at ¶¶ 40–45, 47–52; D.I. 30-3. A supervisor also submitted a supporting declaration. *See* D.I. 30-4 at 1–4.

[8] *See* D.I. 1 at ¶¶ 46, 55; D.I. 30-2 at ¶ 11.

[9] *See* D.I. 1 at ¶¶ 46, 55; D.I. 30-3.

[10] *See* D.I. 30-5 at 5–11, 13–17, 84–87.

[11] *See id.* at 5–11, 13–17.

[12] *See id.* at 84–87.

[13] *See* D.I. 30-2 at ¶ 14. The original collective action settlement notice stated she would receive $50.00. *See id.* The corrected collective action settlement notice stated she would receive $2,202.50. *See id.* at ¶ 14; *id.* at 12. Other employees also assert they "became skeptical of the result" in *Pollock. See* D.I. 30-3 at 2, 6, 9. One employee states he did not receive notice of the earlier collective action. *See id.* at 11.

[14] *See* D.I. 1 at ¶¶ 60–97.

[15] *See id.* at ¶¶ 60–67, 84–92. Ms. Bower also brings claims on behalf of a class for violations of the Ohio Minimum Fair Wage Standards Act. *See id.* at ¶¶ 68–83, 93–97.

[16] *See* D.I. 29 at 1.

[17] *See* D.I. 30 at 12–21; D.I. 54 at 5.

[18] *See* D.I. 51 at 21–38.

[19] *See id.* at 21–26.

[20] *See* D.I. 54 at 5–8.

[21] *See Davis v. Abington Mem'l Hosp.*, 765 F.3d 236, 241 (3d Cir. 2014) (quoting *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 69 (2013)).

[22] *See id.* (citing 29 U.S.C. § 207).

[23] *See id.* (quoting *Davis v. Food Lion*, 792 F.2d 1274, 1276 (4th Cir. 1986)).

[24] *See Symczyk*, 569 U.S. at 69 (citing 29 U.S.C. § 216(b))).

[25] *See id.* (quoting *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 169–70 (1989)).

[26] *See Yates v. Wal-Mart Stores, Inc.*, 58 F. Supp. 2d 1217, 1218 (D. Colo. Aug. 2, 1999) ("[T]here is no indication that a second collective action was intended to be barred . . . . the opt-in provision of [the Fair Labor Standards Act] provides for no legal effect on those parties who choose not to participate."); *Akins v. Worley Catastrophe Response, LLC*, 921 F. Supp. 2d 593, 598 (E.D. La. 2013) ("The plain language of [the Fair Labor Standards Act] does not prohibit employees from bringing more than one collective action based on the same alleged violations . . . . Had Congress wished to limit the number of collective actions that could be brought against an employer, it could have said that only 'one action to recover' may be maintained on behalf of a group of employees. It did not do so."); *Kampfer v. Fifth Third Bank*¸ No. 14-2849, 2016 WL 1110257, at *2–3 (N.D. Ohio Mar. 22, 2016) (noting Congress through the Fair Labor Standards Act "does not prohibit a second collective action").

[27] We note our colleagues offer differing perspectives (based on distinct facts) on whether multiple collectives are inefficient. Some of our colleagues find duplicate collectives are inefficient because they require judges to resolve and employers to defend more than one collective action on the same issues. *See Schucker v. Flowers Foods, Inc.*, No. 16-3439, 2017 WL 3668847, at *5 (S.D.N.Y. Aug. 24, 2017) (noting multiple collectives place "undue burdens on the parties and on judicial resources" (quoting *Becker v. Schenley Indus., Inc.*, 557 F.2d 346, 348 (2d Cir. 1977))). But other colleagues find multiple collectives can be efficient when they might prevent "hundreds of identical lawsuits" from employees who did not opt in to the original collective. *See Yates*, 58 F. Supp. 2d at 1218 (explaining multiple collectives can be efficient because persons who did not join the original collective could then each "file his or her own suit" and an employer could have "to defend itself in . . . potentially hundreds of identical lawsuits" and thus "judicial efficiency demands that, if possible, these individual suits be consolidated"); *but see Schucker*, 2017 WL 3668847, at *6 (finding *Yates* unpersuasive because "[w]ith respect to the judicial efficiency of proceeding by way of a collective action, the court's conclusion in *Yates* depends on the assumption that individuals who chose not to opt-in to the first-filed collective action *will* opt-in to a second collective action (or file their own individual claim)"). We agree with our colleagues finding multiple collective actions can be efficient based on specific facts shown to us today.

[28] *See* D.I. 51 at 21–30.

[29] *See Schucker*, 2017 WL 3668847, at *5–7 (declining certification where ninety-four of the ninety-five individuals plaintiffs identified on their notice list had already received collective action notices in active cases raising the same claims); *see also Whiteman v. Kforce Inc.*, No. 22-56, 2022 WL 16856024, at *3–4 (M.D. Fla. Nov. 10, 2022) (explaining, where another judge in another case preliminarily approved a collective settlement, "conditionally certifying another . . . collective that covers the same Kforce employees who have already been sent notice of their opt-in rights . . . does not promote judicial efficiency"); *Mosley v. Hydrostatic Oil Tools, Inc.*, No. 20-1040, 2021 WL 3134917, at *2 (W.D. Ark. July 23, 2021) (finding "certifying a second, competing collective action would risk undermining the primary goal of collective actions: avoiding multiplicity of similar suits and expediting the disposal of the actions through cut-off dates").

[30] *See Schucker*, 2017 WL 3668847, at *5; *Whiteman*, 2022 WL 16856024, at *3–4; *Mosley*, 2021 WL 3134917, at *2.

---

[31] *See Schucker*, 2017 WL 3668847, at *6; *see also Muñoz v. Thomas L. Cardella & Assocs., Inc.*, No. 21-00558, 2022 WL 3368749, at *4 (D.N.M. Aug. 16, 2022) ("Whether a given successive [Fair Labor Standards Act] collective action is duplicative . . . depends on the circumstances of the particular case.").

[32] *See Schucker*, 2017 WL 3668847, at *6.

[33] *See Muñoz*, 2022 WL 3368749, at *4–5.

[34] *Compare* D.I. 29 ("All current and former hourly, non-exempt production employees of Defendants who were paid for 40 or more hours of work in any workweek since April 11, 2022 and who did not participate in the settlement reached in *Pollock et al. v. DuPont de Nemours, Inc.*, et al., No. 2024 CV 06 0520, (Ct. Com. Pl. Tuscarawas Cnty., Ohio)."), *with* D.I. 30-5 at 100 ("The 1,861 current and former hourly, non-exempt production employees who worked at the following locations of Defendants: Circleville, OH; Copley, OH; Hemlock, OH; Circeville, OH; Dalton, GA; Burley, ID; Joliet, IL; Wilmington, IL; Hemlock, MI; Midland Operations, MI; Pevely, MO; Yerkes – Tedlar, NY; Yerkes – Corian, NY; and Washington Works, WV, who were paid for 40 or more hours of work in any workweek from September 18, 2020 through the present date[.]"), *and* D.I. 30-5 at 162 ("[C]urrent and former hourly, non-exempt production employees who worked for DuPont de Nemours, Inc., DuPont Specialty Products USA, LLC, or On-Board PMO Corporation ("Defendants") at any of the following locations between: Circleville, OH; Copley, OH; Hemlock, OH; Circleville, OH [sic]; Dalton, GA; Burley, ID; Joliet, IL; Wilmington, IL; Hemlock, MI; Midland Operations, MI; Pevely, MO; Yerkes – Tedlar, NY; Yerkes – Corian, NY; Washington Works, WV; Spruance, VA; and Newark, DE, at any time from September 18, 2020 through [redacted].").

[35] *See* D.I. 30-2 at ¶ 14; *see also* D.I. 30-3 at 2, 6, 9.

[36] DuPont de Nemours and DuPont Specialty Products also ask us to give the *Pollock* settlement "preclusive effect" in passing. *See* D.I. 51 at 26–28. But "[n]either claim nor issue preclusion applies to settlement agreements in [Fair Labor Standards Act] actions to which plaintiffs in a later-filed action did not opt in." *See Akins*, 921 F. Supp. 2d at 603; *see also Halle v. W. Penn Allegheny Health Sys. Inc.*, 842 F.3d 215, 221–22 (3d Cir. 2016) (summarizing district court judge's opinion applying issue preclusion to a proposed collective in part because the named plaintiffs already litigated decertification in an earlier case).

[37] *See* D.I. 51 at 30–38.

[38] *See* D.I. 54 at 5.

[39] *See Halle*, 842 F.3d at 224.

[40] *See id.* The second step is "final certification." *See id.* at 226. At the final certification stage the named employee must prove by a preponderance of the evidence the opt-in employees are similarly situated to her. *See Zavala v. Wal Mart Stores Inc.*, 691 F.3d 527, 537 (3d Cir. 2012).

[41] *See Halle*, 842 F.3d at 224 (quoting *Zavala*, 691 F.3d at 536 n.4). The named employee need only show at this stage the employer subjected the proposed collective members to the same policy; the proposed collective members can hold "different jobs, in different departments, [and] at different locations." *See Bowser v. Empyrean Servs., LLC*, 324 F.R.D. 346, 352 (W.D. Pa. 2018).

[42] *See Dunkel v. Warrior Energy Servs., Inc.*, 304 F.R.D. 193, 200 (W.D. Pa. 2014).

[43] *See Halle*, 842 F.3d at 224–25.

[44] *See* D.I. 51 at 36–38.

[45] *See* D.I. 54.

[46] 29 U.S.C. § 203(d).

[47] *See In re Enter. Rent-A-Car Wage & Hour Emp. Pracs. Litig.*, 683 F.3d 462, 467 (3d Cir. 2012) (citing 29 C.F.R. § 791.2(a)).

[48] *See id.* at 468 (quoting *N.L.R.B. v. Browning-Ferris Indus. of Pa., Inc.*, 691 F.2d 1117, 1123 (3d Cir. 1982)).

[49] *See id.* at 469 (quoting *Bonnette v. Cal. Health & Welfare Agency*, 704 F.2d 1465, 1470–71 (9th Cir. 1983)).

[50] *See id.* at 469–70.

[51] *See Johnston v. Titan Logistics & Res., LLC*, No. 17-1617, 2019 WL 4345725, at *7 (W.D. Pa. Sept. 12, 2019) (applying modest factual showing standard to joint employer question at conditional certification stage); *see also Fischer v. Fed. Express Corp.*, 509 F. Supp. 3d 275, 290 (E.D. Pa. 2020) (concluding an entity is not a joint employer at the conditional certification stage where the alleged employees "offered no 'indicia of significant control' suggesting that [the entity] could be fairly characterized as their joint employer" and also observing "the evidence weighs heavily against the existence of a joint employer relationship"), *aff'd on other grounds*, 42 F.4th 366 (3d Cir. 2022).

[52] *See* D.I. 1 at ¶¶ 22–24, 30, 46, 52–53, 56.

[53] *See* D.I. 30-2 at ¶ 2; D.I. 30-3 at 1, 4 , 8, 10.

[54] *See* D.I. 54.

[55] *See Fischer*, 509 F. Supp. 3d at 283 ("While [the modest factual showing standard] is a lenient standard, mere allegations in the complaint are not sufficient to make a modest factual showing." (citing *Drummond v. Herr Foods, Inc.*, No. 13-5991, 2015 WL 894329, at *2 (E.D. Pa. Mar. 2, 2015))).

13

[56] *See* D.I. 51 at 30–36. DuPont Specialty Products argues we need to analyze whether each employee's meal periods are creditable against the unpaid pre- and post-shift work to determine whether it is liable. *See id.*

[57] *See* D.I. 30 at 16–21; D.I. 54 at 5.

[58] *See* D.I. 30-2; D.I. 30-3.

[59] *See Gauzza v. Prospect Med. Holdings, Inc.*, No. 17-3599, 2018 WL 5452746, at *2 (E.D. Pa. Oct. 26, 2018) (explaining the conditional certification inquiry is "'extremely lenient,' . . . 'routinely granted,' . . . and not an appropriate setting to 'weigh the evidence, resolve factual disputes, or reach the merits of [Plaintiffs'] claims'" (quotations omitted)). We also note DuPont Specialty Products does not explain why Ms. Bower could not move to withdraw as the named representative for the collective if needed. *See Stallard v. Fifth Third Bank*, No. 12-1092, 2013 WL 12308493, at *2 (W.D. Pa. Dec. 12, 2013) ("As to the arguments that each of the Plaintiffs is an improper representative, that too misses the mark . . . . Whether or not [a representative] was a poor employee . . . is a merits/damages related question that need not be resolved at this early stage, and in any event, a number of others who have already opted into the action do not appear to have the same issues (if they are issues at all) . . . . [A] substitution can be made.").

[60] *See Halle*, 842 F.3d at 224 (citing *Zavala*, 691 F.3d at 536).

[61] *See* D.I. 29 at 1–2; D.I. 30 at 21–24.

[62] *See* D.I. 51 at 38.

[63] *See Burrell v. Lackawanna Recycling Ctr., Inc.*, No. 14-1891, 2024 WL 2055003, at *8–9 (M.D. Pa. May 6, 2024) (quoting *Belt v. P.F. Chang's China Bistro, Inc.*, No. 18-3831, 2020 WL 3829026, at *9 (E.D. Pa. July 8, 2020)) (collecting cases).

[64] *See* D.I. 29 at 1; D.I. 30 at 24; D.I. 30-1 at 1–5.

[65] *See* D.I. 30-1 at 2, 5.

[66] *See id.* at 3.

[67] *See* D.I. 29 at 2.

[68] *See* D.I. 51.

14